John D. BROWN, Petitioner-Appellant,

v.

Robert H. BUTLER, Jr., Warden,
Louisiana State Penitentiary,
Respondent-Appellee.

No. 85–4941.

United States Court of Appeals,
Fifth Circuit.

March 10, 1987.

John D. Brown, pro se.

Ronnie O. McMillin, Asst. Dist. Atty., Vidalia, La., for respondent-appellee.

Before THORNBERRY, DAVIS and HILL, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Habeas petitioner, John D. Brown, appeals from the denial of his petition with-out a hearing. We affirm the district court's ruling on all claims except petitioner's claim of ineffective assistance of counsel; we remand that claim for an evidentiary hearing.

## I.

On July 2, 1980, John D. Brown was arrested while attempting to cash a counterfeit payroll check at a convenience store in Ferriday, Louisiana, in Concordia Parish. Brown's wife, who was waiting in their automobile outside the store, was also arrested. Upon searching Brown's automobile, the police discovered eight more counterfeit checks. Brown then offered to give the police a statement in return for the release of his wife. The police released Brown's wife and accompanied her to Port Allen, in West Baton Rouge Parish, where she gave them Brown's counterfeiting paraphernalia.

Brown was charged with ten counts of forgery in Concordia Parish. After consultation with his attorney, Brown entered a guilty plea which the court accepted. A presentence investigation (PSI) was ordered and Brown was interviewed by a probation officer. Approximately six weeks later, in September 1980, Brown's attorney moved to withdraw Brown's plea which the court granted. Two days later, after further discussion between Brown and his attorney, Brown changed his mind and again sought to plead guilty. When Brown appeared before the court for the second time, he stated affirmatively that he wished to plead guilty to all ten counts. At that hearing, after clarification of the PSI report, the court accepted Brown's plea and also imposed sentence. The court sentenced Brown to a total of thirty years at hard labor. The sentence was structured so that Brown received three consecutive ten year terms on counts one through three with ten year terms on the remaining counts that run concurrently with the sentence on counts one through three.

After exhausting his state remedies, Brown filed this habeas petition which the

district court denied without an evidentiary hearing.

On appeal, as below, Brown asserts four grounds for relief: (1) his plea was not truly voluntary because he had an inadequate understanding of the nature of the charges against him; (2) the PSI report, upon which his sentence was based, included inculpatory statements taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); (3) his PSI interview was conducted in violation of his sixth amendment right to counsel; and (4) he received ineffective assistance of counsel. We address these contentions in the order raised.

## II.

### A.

■ Whether a plea is voluntary is determined by "considering all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). A guilty plea cannot be voluntary unless the accused has received real notice of the true nature of the charges against him. *Marshall v. Lonberger*, 459 U.S. 422, 436, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983).

Brown contends that his plea was involuntary because he held the erroneous belief that the necessary intent to commit the crime of forgery, intent to defraud, was conclusively established by the possession of forged checks. He argues that his statements to this effect at his second plea hearing overcome any finding of voluntariness.

■ The constitution requires that the accused be informed of the elements of the crime charged. *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). This requirement is satisfied here because it is apparent from the record that Brown was aware that one of the elements of the crime charged, forgery, was that he intended to distribute the forged checks in

his possession.[1] The sentencing judge did not explain to Brown the inferences that a jury could draw from his possession of forged checks. However, such an explanation is not constitutionally required. *See Diaz v. Martin*, 718 F.2d 1372, 1377 (5th Cir.1983), cert. denied, 466 U.S. 976, 104 S.Ct. 2358, 80 L.Ed.2d 830 (1984).

Because the record demonstrates that Brown knowingly and voluntarily waived his right to require the state to prove all of the elements of his alleged offense, the district court did not err in concluding that Brown's guilty plea was voluntary.

### B.

■ Brown next asserts that the PSI interview upon which his prison sentence was based included inculpatory statements taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This claim is meritless. By pleading guilty, Brown waived the privilege against compulsory self-incrimination guaranteed by the fifth amendment. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *United States v. Escandar*, 465 F.2d 438, 441 (5th Cir. 1972).

### C.

Brown also argues that his sixth amendment right to counsel was violated when he was not told that he had a right to counsel at his interview with the probation officer assigned to prepare his PSI. During that interview, Brown told the probation officer that he had supported himself for a number of years by periodically travelling across the country passing bad checks.

Brown relies on *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), for the proposition that he was entitled to counsel at his presentence interview. In *Estelle*, the defendant Smith was indicted for murder, a capital offense. Before trial, Smith submitted to a psychiatric

---

**1.** At his second plea hearing, Brown stated that he had possession of the checks in his car and "of course at my residence they probably found more. I realize that there is an assumption that [sic] of intent when a person carries the sort of things with them,...."

interview to determine whether he was mentally competent to stand trial. Smith was not advised of his right to consult counsel with respect to this interview. In the penalty phase of the bifurcated proceeding, the psychiatrist who had examined Smith testified on the critical issue of Smith's future dangerousness. The psychiatrist concluded that the defendant was a "very severe sociopath" with "no remorse or sorrow for what he has done" and that the defendant would in effect be a dangerous threat to society if not executed. *Id.* at 459–60, 101 S.Ct. at 1871. The Supreme Court limited its inquiry to "the circumstances of this case" and observed that the dangerousness question was "a critical issue at the sentencing hearing, and one on which the State had the burden of proof beyond a reasonable doubt." *Id.* at 466, 101 S.Ct. at 1874. The court concluded that the failure to allow counsel to consult with defendant as to "the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed" violated defendant's sixth amendment right to counsel. *Id.* at 471, 101 S.Ct. at 1877.

The question for decision is whether the Court's conclusion in *Estelle* that Smith was entitled to consult with counsel before his interview with the psychiatrist requires us to hold that Brown was entitled to consult with counsel before his presentence interview with a probation officer.

The Ninth Circuit in *Baumann v. United States,* 692 F.2d 565 (9th Cir.1982), was presented with this identical question; it declined to extend *Estelle* to require the state to advise the accused of his right to consult counsel before his routine presentence interview with a probation officer in a non-capital case.

We agree with the court in *Baumann* that *Estelle* should be read narrowly. The Court did not write broadly; to the contrary it restricted its consideration to "the circumstances of this case." *Estelle,* 451 U.S. at 461, 101 S.Ct. at 1872. The Court also observed that the dangerousness question was "a critical issue at the sentencing

hearing and one on which the State had the burden of proof beyond a reasonable doubt." *Id.* at 466, 101 S.Ct. at 1874. As the *Baumann* court noted:

> This is not a bifurcated jury proceeding involving the potential of the ultimate penalty, death. Nor is the question ... which Baumann raises nearly as critical an issue in this case as was the question of future dangerousness in *Estelle*.... We conclude that there is a substantial difference between a psychiatric examination of the defendant in a capital case which seeks to elicit evidence from the defendant relating to the critical aggravating factor of dangerousness, and a "routine" presentence interview ... restricted to gathering information upon which the district court, in its discretion, may rely when imposing sentence.

*Baumann,* 692 F.2d at 576.

■ In sum, we are persuaded that *Estelle* is distinguishable from today's case. Brown was interviewed by a probation officer, who is an arm of the court charged with assisting the court in arriving at a fair sentence. We conclude that such an interview is not a critical stage of the proceeding in which counsel's presence or advice is necessary to protect the defendant's right to a fair trial. The district court did not err in rejecting this claim.

### D.

Brown finally asserts that he was denied effective assistance of counsel. He contends that: (1) his counsel was ineffective because he failed to advise Brown of the jurisdictional defense to eight of the ten forgery counts to which Brown pled guilty; (2) counsel failed to effectively present the mitigating circumstances in Brown's case at sentencing or object to the consecutive sentences; (3) counsel was deficient because he failed to appeal Brown's sentence; and (4) counsel failed to inform Brown of his right to appeal his sentence.

■ In order to be successful on any of these ineffective assistance of counsel claims, Brown must show that: (1) coun-

sel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that but for counsel's unprofessional errors, the results of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064–65, 2068, 80 L.Ed.2d 674 (1984). In order to show sufficient prejudice in the context of a guilty plea, Brown must demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). See also *Craker v. McCotter,* 805 F.2d 538, 541 (5th Cir.1986).

■ Brown first argues that venue was improper as to eight of the ten counts upon which he was convicted and his counsel was ineffective for failing to advise Brown of this defense. In Louisiana the state can proceed against an accused charged with forgery either in the parish where the signature was forged or in the parish where the forged instrument was issued or transferred. *State v. Frank,* 355 So.2d 912 (La.1978); La.Rev.Stat.Ann. § 14:72 (West 1986); La.Code Crim.Proc. Ann. art. 611 (West 1981). Louisiana requires the state to affirmatively establish proper venue in order to obtain a conviction. *State v. Rheams,* 352 So.2d 615, 618 (La.1977).

In *State v. Frank,* the Louisiana Supreme Court expressly held that the trial court correctly quashed the indictment when the state did not establish that the instrument was forged, issued or transferred in the parish where the charges were filed. Consequently, if, as Brown asserts, he did not forge, issue or transfer eight of the checks in Concordia Parish, venue was improper in that parish and the state could not have obtained a conviction on the eight counts predicated on those checks.

■ An attorney performing in a professionally reasonable manner should be familiar with the venue provisions of the Louisiana Code of Criminal Procedure. Counsel should have particularly been aware of the venue provisions for a forgery prosecution because the Louisiana Supreme Court had dealt specifically with this point in *State v. Frank.* See *Kennedy v. Maggio,* 725 F.2d 269, 272 (5th Cir.1984) (quoting *Cooks v. United States,* 461 F.2d 530, 532 (5th Cir.1972)). Thus, viewing counsel's conduct with "a heavy measure of deference to counsel's judgment," *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, we are persuaded that if counsel failed to advise Brown of the available venue defense, this omission rendered counsel's performance below the objective standard of reasonableness. Without this advice, Brown was unable to make an informed and conscious choice of whether he should enter a guilty plea. See *Mason v. Balcom,* 531 F.2d 717, 724 (5th Cir.1976).

■ In order to prevail on his ineffective assistance claim, Brown must also demonstrate prejudice from counsel's alleged deficient performance. *Strickland,* 466 U.S. at 691–94, 104 S.Ct. at 2066–68. In *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985), the Court noted that "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* If, as Brown asserts, venue was improper as to eight of the ten counts upon which he was convicted, he could have prevailed on those eight counts.

On remand, the district court should determine whether the state had a factual basis for venue in Concordia Parish on eight of the forgery counts to which Brown pled guilty. If venue was not proper in Concordia Parish, the district court should determine whether counsel advised Brown of this defense; if the district court determines that counsel did not advise Brown of this defense, the district court should grant the writ on those eight counts unless the state tries Brown within a reasonable time in the proper venue on those counts.

Brown's remaining claims predicated on ineffective assistance of counsel are without merit. He contends that his counsel was ineffective in failing to adequately present mitigating circumstances at his sentencing, failing to inform Brown of his right to appeal and in failing to appeal the sentence. Even if counsel's performance was deficient in any of the above respects, Brown has not demonstrated that he was prejudiced from counsel's conduct.

*Craker v. McCotter*, 805 F.2d 538 (5th Cir.1986) is dispositive of two of these contentions; that counsel inadequately presented mitigating circumstances and did not inform him of his right to appeal. In *Craker*, the petitioner alleged that his counsel was ineffective because effective counsel could have negotiated a more favorable plea bargain. The district court found that effective counsel would indeed have negotiated a more favorable plea bargain and granted the writ. We reversed and held that under *Hill v. Lockhart* the petitioner was not entitled to a finding of prejudice simply because he would have received a more favorable plea bargain; we concluded that a petitioner complaining of ineffective assistance of counsel after a guilty plea must allege and prove that had he received effective assistance of counsel, he would have rejected the plea bargain and gone to trial. *Id.* at 542. Because Brown has not alleged this type of prejudice, he is entitled to no relief on these claims.

Brown's last contention that his attorney was ineffective because he did not appeal the sentence on the eight counts for which the state had improper venue is simply an extension of the argument discussed above that counsel was ineffective in failing to advise Brown of this defense. The resolution of Brown's contention that he should have been advised of this potential defense will also dispose of this claim.

For the reasons stated above, the judgment of the district court is affirmed in all respects except for petitioner's claim of ineffective counsel; the district court's rejection of that claim is vacated and the case is remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED in part, VACATED in part and REMANDED.